A. G. File No. 554

Board of Insurance Commissioners
Austin, Texas

Dear Sirs:                    Attention:  Mr. Geo. Van Fleet,
                                          Actuary.

                              Opinion No. O-3503
                              Re:  The investment of the funds
                                   of a domestic life insurance
                                   company in the share or share
                                   accounts of the defined building
                                   and loan associations.

        With special reference to Section 1 of Senate Bill
No. 13 and to Section 1 of Senate Bill No. 370, Acts of the 46th
Legislature, 1939, you have requested a legal opinion from this
department upon the question stated by you as follows:

        "This quoted portion of Article 4725 in
        part governs the investments of domestic life
        insurance companies and prescribes that the
        surplus of a Texas life insurance company over
        and above the amount of its reserves and cap-
        ital stock may be invested in certain stocks
        which we presume to include the share or share
        accounts of a Federal savings and loan associa-
        tion domiciled in this State and the share or
        share accounts of a building and loan associa-
        tion domiciled in this State.

        "The quoted portion of Article 881a-24,
        you will note provides that a Texas insurance
        company may invest any of its funds in such
        share or share accounts.

        "Therefore, your opinion is respectfully
        requested as to which of these two Articles is
        controlling.  That is, whether or not the cap-
        ital stock and the reserves of a domestic life
        insurance company may be invested in the share
        or share accounts of the defined building and
        loan associations, or if only the surplus of a
        Texas company may be invested in such share or

Board of Insurance Commissioners, Page 2


share accounts."

Senate Bill No. 13 of the 46th Legislature (Acts 1939, Page 76) was a comprehensive amendment of Senate Bill No. 111 of the Second Called Session of the 41st Legislature, Acts 1929, as amended, commonly known as the Building and Loan Association Law (Article 881a, V.A.C.S.). We are concerned only with the amendment to Section 25 thereof which formerly read:

"Sec. 25. Trust funds. An administrator, executor, guardian or trustee, or other fiduciary, may in such capacity acquire and hold shares in any building and loan association of this State, and shall have the same rights and be subject to the same obligations and limitations as other shareholders and be withdrawable by them. Any Texas corporation may invest in shares in any Texas building and loan association."

Under Senate Bill No. 13, said Section 25 was amended to read, in part, as follows:

"Any Texas corporation, including any insurance company organized under the laws of this State, or any insurance company doing business in this State under a permit, may invest any of its funds in the shares or share accounts of any building and loan association organized under the laws of this State, or in the shares or share accounts of any Federal Savings and Loan Association domiciled in this State, and any such investments made by insurance companies shall be eligible investments for tax reducing purposes under Article 7064 and Article 4769 of the Revised Civil Statutes of 1925, as amended."

Article 4769, as amended, referred to in the above amendment, applies only to "each life insurance company not organized under the laws of this State, transacting business in this State." Article 7064, as amended, likewise referred to, applies to "every insurance corporation, Lloyds or reciprocals, and any other organization or concern transacting the business of fire, marine, marine inland, accident, credit, title, livestock, fidelity, guaranty, surety, casualty, or any other kind or character of insurance business other than the business of life insurance."

Board of Insurance Commissioners, Page 3


Senate Bill No. 13 was finally acted upon by the 46th Legislature as of April 26, 1939. It is to be noted that the language of the amendment to Section 25 is comprehensive and general.

Senate Bill No. 370 of the 46th Legislature (Acts 1939, Page 397) was an amendment to certain specific laws regulating particularly the investment of funds of life insurance companies organized under the laws of Texas -- Article 4725, Revised Civil Statutes, as amended. It was finally passed by the 46th Legislature as of May 1, 1939, and therefore represents an expression of the Legislature subsequent to the final passage of Senate Bill No. 13. Appertaining to the subject of your request, Section 3 of Senate Bill No. 218, Acts 1931, 42nd Legislature, Regular Session, Chapter 153, Page 256 (which was unchanged by Senate Bill No. 96, Acts 1935, 44th Legislature, Ch. 10, P. 28, amending Article 4725 in other particulars) was amended by Senate Bill No. 370 to read as follows:

"A life insurance company organized under the laws of this State may invest in or loan upon the following securities, and none others, viz: * * *.

"'3. Any life insurance company of the State, for the purpose of investing its surplus or any part thereof, over and above the amount of its reserves and capital stock, may purchase and hold as collateral security, or otherwise, and sell and convey the capital stock, bonds, debentures, bills of exchange or other commercial notes or bills and securities of any solvent dividend paying corporation which has not defaulted in the payment of any of its obligations for a period of five (5) years, the current market value of which such stock, bonds, debentures, bills of exchange, or other commercial notes or bills and securities shall be at all times during the continuance of such loan at least fifty (50%) per cent more than the sum loaned thereon; provided that no such company shall loan or invest in its own stock, nor more than five (5%) per cent of the amount

Board of Insurance Commissioners, Page 4

of its capital and surplus in the stock of
any corporation, and provided further that
no such company shall invest any of its funds
in any stock on account of which the holders
or owners thereof may in any event, be or
become liable to any assessment except for
taxes, nor in the stock of any oil company
or manufacturing company unless such corpora-
tion has capital stock of not less than Five
Million ($5,000,000.00) Dollars and unless
such corporation has paid dividends for a
period of five (5) years and has not default-
ed in the payment of any of its debts for a
period of five (5) years.

"* * *."

Prior thereto under Senate Bill No. 218 of the 42nd
Legislature, supra, Section 3 of Article 4725 had read as fol-
lows:

"3. Any Life Insurance Company of the
State, for the purpose of investing its cap-
ital and surplus, or any part thereof, over
and above the amount of its reserves, may
purchase and hold as collarteral security,
or otherwise, and sell and convey the capital
stock, bonds, bills of exchange or other com-
mercial notes or bills and securities of any
solvent dividend paying corporation which
has not defaulted in the payment of any of
its obligations for a period of five years,
the current market value of which such stock,
bonds, bills of exchange, or other commercial
notes and securities shall be at all times
during the continuance of such loan at least
fifty per cent more than the sum loaned there-
on; provided that no such company shall loan
upon or invest in its own stock, nor more
than five per centum of its capital and surplus
in the stock of any corporation, and provided
further that no such company shall invest any
of its funds in any stock on account of which
the holders or owners thereof may in any event,
be or become liable to any assessment except
for taxes, or in the stock of mining or oil

companies or in the stock of manufacturing companies commonly known as industries."

It is observed that under the 1931 Act a life insurance company organized under the laws of Texas was authorized to invest its capital and surplus in the securities described, whereas under the 1939 Act, Senate Bill No. 370, only its surplus.

Immediately we are compelled to recognize that the 46th Legislature did a contradictory thing if Senate Bill No. 13 of the same Legislature applies to the funds of life insurance companies organized under the laws of Texas. This for the obvious reason that under Senate Bill No. 13 "any Texas corporation, including any insurance company * * * may invest any of its funds" in the securities described, whereas under Senate Bill No. 370, only its surplus, and that only as otherwise restricted.

That the 46th Legislature did not, however, do this but rather conformed to the historic legislative treatment of the funds of a life insurance company organized under the laws of Texas as a specific and separate subject of regulation, is demonstrated by the legislative history of acts pertaining thereto.

Long ago, in the year 1909, the 31st Legislature of Texas decided that investments by life insurance companies organized under the laws of Texas should be specifically regulated, separate and apart from other corporations and insurance companies. Section 10 of Senate Bill No. 291, Acts 1909, 31st Legislature, Chapter 108, Page 192, provided as follows:

"Sec. 10. A life insurance company organized under the laws of this State, may after this Act takes effect invest in or loan upon the following securities, viz:

"(a) It may invest any of its funds or accumulations in the bonds of the United States or of any State, county, or city of the United States, or the bonds, of any independent or common school district, or first mortgage bonds of any dividend paying railroad or electric railway company duly incorporated under the laws of the United States or any State thereof.

"(b) It may loan any of its funds and accumulations, taking as security therefor such collateral as under the previous subdivision it

may invest in; and upon first liens upon real estate, the title to which is valid and the value of which is double the amount loaned thereon; provided, that if any part of such value is in buildings, such buildings shall be insured against loss by fire for at least fifty per cent of the value thereof, with loss clause payable to such company. It may also make loans upon the security of or purchase its own policies, but no loan on any policy shall exceed the reserve value thereof. No investment or loan, except policy loans, shall be made by any such insurance company unless the same shall first have been authorized by the board of directors, or by a committee charged with the duty of supervising such investments or loans. No such company shall subscribe to or participate in any underwriting of the purchase or sale of securities or property or enter into any such transaction for such purpose, or sell on account of such company jointly with any other person, firm or corporation, nor shall any such company enter into any agreement to withhold from sale any of its property, but the disposition of its property shall be at all times within the control of its board of directors. Every such company possessed of assets not authorized by this Act shall dispose of the same within five years after the taking effect of this Act, unless such time is extended for good cause of the Commissioner of Insurance and Banking."

This was followed by Senate Bill No. 297, Acts 1929, 41st Legislature, Regular Session, Chapter 237, Page 497, amending in certain particulars the 1909 Act which had become Article 4725 in the 1925 revision. It is noteworthy that this was the same Legislature which in its Second Called Session enacted the Building and Loan Association Law which contained the statement in Section 25 "any Texas corporation may invest in shares in any Texas building and loan association."

Subsequently, in 1931, the 42nd Legislature again amended the law regulating the investments of the funds of life insurance companies organized under the laws of Texas and for the first time included the subject matter contained in Section 3 of Article 4725. Section 3 of the 1931 amendatory Act has been quoted above.

Board of Insurance Commissioners, Page 7

Again in 1935, the authority of life insurance companies organized under the laws of Texas to invest their funds was broadened to aid the National Housing Act enacted by the Congress of the United States. Section 3 of Article 4725 remained unchanged.

Thus we arrive at the 46th Legislature which amended the Building and Loan Association Act by Senate Bill No. 13, and, later, amended Section 3 of Article 4725 by Senate Bill No. 370. No cognizance was taken, or has ever been taken, by the Legislature of the possible or intended application of the general language of the Building and Loan Act, and amendments thereto, to the field of investments by domestic life insurance companies.

It is seen that since 1909 the Legislatures of Texas have regulated the investments of the funds of life insurance companies organized under the laws of Texas as a separate, distinct and exclusive field of legislation. The laws thereupon have been special and restricted. Succeeding Legislatures of Texas have surrounded these companies with particular and specific regulations. Senate Bill No. 370 is the last expression of the Legislature in this respect; it further restricts investments by these companies.

It is obvious that the restrictions have been deliberately created. In the beginning is the language "a life insurance company organized under the laws of this State may invest in or loan upon the following securities, and none others." In Section 3 the investment of the surplus is further restricted by the proviso "provided that no such company shall loan or invest * * * more than five (5) per cent of the amount of its capital and surplus in the stock of any corporation." By this proviso the Legislature indisputably declared that no domestic life insurance company shall make an investment, as otherwise allowed, beyond a certain amount in any one corporation. Yet if the amendment to the Building and Loan Act by Senate Bill No. 13 be held applicable to domestic life insurance companies, the Legislative mandate in this respect would be entirely abrogated and a domestic life insurance company would be permitted to invest any or all of its funds in one building and loan association.

Accordingly we cannot hold that the 46th Legislature, in the enactment of Senate Bill No. 13 and later of Senate Bill No. 370, adopted an inconsistent and unintended position. As said by the Supreme Court in Cain v. State, 20 Tex. 355, 361:

"The same Legislature is supposed to be actuated, in all that it does, by the same mind, spirit, and intention, and to have, at all times, the same governing objects and policy. The artificial being is supposed to have but one mind, and that a rational and intelligent mind; and hence the cogency of the presumption, affirmed by the constitution, that it will not change from day to day during the same session, and undo to-day what was done with so much deliberation and solemnity yesterday. It is not to be supposed, nothing short of expressions so plain and positive as to force upon the mind an irresistible conviction, or absolute necessity, will justify a court in presuming, that it was the intention of the Legislature that their acts passed at the same session, should abrogate and annul one another. * * *."

We are therefore compelled to honor the provisions of Senate Bill No. 370, amending Section 3 of Article 4725, as applicable and controlling regarding the investments of the funds of life insurance companies organized under the laws of Texas. And the provisions of Senate Bill No. 13, amending the Building and Loan Association Laws, as without application thereto.

We now advert briefly to the question suggested in your letter as to whether Section 3 of Article 4725, as amended, includes the share or share accounts of a building and loan association within the securities described. In our opinion, by every reasonable intendment, these securities are included. The phrase "capital stock," of course, may be used in various senses: as the authorized capital actually subscribed; or the fund paid in; or the capital of the corporation, whether in money or property; or, as popularly used, the aggregate of the stock made up of the shares of the stockholders.

It may be defined as the money or property put into the corporate funds by the subscribers for their stock, and a share of capital stock is the right to partake, according to the amount put into the funds, of the surplus profits. See Staples v. Kirby Petroleum Company, 250 S. W. 293; Insurance Company v. Hollifield, 184 S. W. 776.

Article 856, Revised Civil Statutes, provides:

"The authorized capital stock of such association shall be divided into shares having a par value of not less than * * *."

Article 881a-29, Vernon's Annotated Civil Statutes, requires the following to be shown in the articles of association incident to the incorporation of a building and loan association:

"4. The amount of its authorized capital stock, which shall be divided into shares of the maturity or par value of not less than one hundred (100) dollars each.

"* * *.

"6. The amount of capital actually paid in which shall in no event be less than one thousand (1000) dollars if * * *. All payments for shares or share accounts of required paid-in capital stock must be in lawful money of the United States and must be in the custody of the persons named as the first board of directors."

You are therefore respectfully advised, in answer to the specific question you have submitted, that it is the considered opinion of this department that a life insurance company organized under the laws of Texas is controlled, with respect to investments in the share or share accounts of the defined building and loan associations, by Section 3 of Article 4725, as amended, and not by Section 25 of Senate Bill No. 111 of the Second Called Session of the 41st Legislature (Article 881a-24, V.A.C.S.), as amended by Senate Bill No. 13 of the 46th Legislature.

We have pretermitted a discussion of any questions of constitutional law inhering in this subject in view of your request only for a construction of the statutes involved.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By _Zollie C. Steakley_
Zollie C. Steakley
Assistant

APPROVED SEP 19, 1941

_Grover Sellers_
FIRST ASSISTANT
ATTORNEY GENERAL

APPROVED
OPINION
COMMITTEE
BY _BWB_
CHAIRMAN

ZCS:RS